# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| TYLER SHAY, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | No. 4:18-00970-CV-RK |
|  | ) |  |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | ) ) | |
|  | ) |  |
| Defendant. | ) |  |

## ORDER REVERSING THE ALJ'S DECISION AND REMANDING THE CASE

Before the Court is Plaintiff's appeal brought under 42 U.S.C. § 405(g) seeking review of Defendant Commissioner of Social Security Administration's ("SSA") denial of disability benefits as rendered in a decision by an Administrative Law Judge ("ALJ"). For the reasons below, the decision of the ALJ is **REVERSED**, and the case is **REMANDED**.

### Standard of Review

The Court's review of the ALJ's decision to deny disability benefits is limited to determining if the decision "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (quoting *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008)). "Substantial evidence is less than a preponderance of the evidence, but is 'such relevant evidence as a reasonable mind would find adequate to support the [ALJ's] conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014) (quoting *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001)). In determining whether existing evidence is substantial, the Court takes into account "evidence that detracts from the [ALJ's] decision as well as evidence that supports it." *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) (citation omitted). "If the ALJ's decision is supported by substantial evidence, [the Court] may not reverse even if substantial evidence would support the opposite outcome or [the Court] would have decided differently." *Smith v. Colvin*, 756 F.3d 621, 625 (8th Cir. 2014) (citing *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001)). The Court does not "re-weigh the evidence presented to the ALJ." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003)). The Court must "defer heavily to the

findings and conclusions of the [ALJ]." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) (citation omitted).

## Discussion

By way of overview, the ALJ found that Plaintiff has severe impairments of posttraumatic stress disorder ("PTSD"), anxiety, depressive disorder, and tremors. However, the ALJ found that none of Plaintiff's impairments, whether considered alone or in combination, meet or medically equal the criteria of one of the listed impairments in 20 CFR Pt. 404, Subpt. P, App. 1 ("Listing"). Additionally, the ALJ found that despite Plaintiff's limitations, he retained the residual functional capacity ("RFC") to perform light work[1] with the following limitations:

> [H]e can lift and carry 20 pounds occasionally and 10 pounds frequently. He can stand or walk 6 hours and sit 6 hours in an 8-hour workday. He can frequently handle and finger. He can perform simple and routine tasks in an unskilled work setting where no more than occasional changes are required. He cannot interact with the public in the performance of his job duties. He can occasionally interact with coworkers and supervisors.

(Tr. 14.) The ALJ then found that, considering Plaintiff's age, education, work experience, and RFC, he can perform jobs that exist in significant numbers in the national economy, such as the jobs of advertising materials distributor, cleaner/housekeeper, and marker. Consequently, the ALJ concluded that Plaintiff was not disabled.

On appeal, Plaintiff argues that the ALJ (1) failed to address certain limitations in his treating physician's opinion and (2) improperly discounted Plaintiff's subjective reports about his symptoms. The Court agrees.

## I. Treating Physician's Opinion

Plaintiff's treating psychiatrist, Rubin Moore, M.D., opined that Plaintiff was limited as follows because of his unspecified bipolar disorder, PTSD, and generalized anxiety disorder:

- He would miss approximately four days of work per month.
- He would likely be off task for even simple tasks 25% or more of the time.

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R §§ 404.1567(b), 416.967(b).

- He is "markedly limited" (meaning there is a serious interference with independent functioning) in his ability "to complete a normal workday and workweek without interruption from psychologically based symptoms" and in his ability "to perform at a consistent pace without an unreasonable number and length of rest periods."

- He is "moderately limited" (meaning he retains some but not all useful functioning) in his abilities to:

    (1) understand and remember detailed instructions;

    (2) carry out detailed instructions;

    (3) maintain attention and concentration for extended periods;

    (4) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;

    (5) interact appropriately with the general public;

    (6) accept instructions and respond appropriately to criticism from supervisors; and

    (7) set realistic goals or make plans independent of others.

(Tr. 392-93.) The ALJ stated as follows with respect to Dr. Moore's opinion: "Dr. Moore's assessment regarding missed workdays and percent off task is given no weight as it is inconsistent with the evidence. In fact, treatment records consistently note the claimant's attention is intact." (Tr. 16 (citations omitted).)

Plaintiff argues that the ALJ addressed only two of the relevant limitations in Dr. Moore's opinion (the first two bullet points above) and therefore erred either by failing to discount the others or by failing to account for them when calculating the RFC. The Court agrees.

"The RFC assessment must always consider and address medical source opinions." SSR 96-8P, 1996 WL 374184 at *7 (S.S.A. July 2, 1996). "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Id.*; *see also Trotter v. Colvin*, No. 3:15-CV-05013-NKL, 2015 WL 5785548, at *4 (W.D. Mo. Oct. 2, 2015) (error not to explain why the RFC did not account for limitations in a medical opinion); *White v. Astrue*, No. 10-5064-CV-SW-JCE, 2012 WL 930840, at *7 (WD. Mo. Mar. 19, 2012) (error to give some weight to a physician's opinion but not include the physician's restrictions in the RFC).

Here, the RFC does not contain the "marked" limitations referenced in Dr. Moore's opinion (the third bullet point above). Although the ALJ addressed the first two bullet points above (i.e., Plaintiff's ability appear for work and stay on task), the ALJ did not provide any explanation

3

for why she discounted Dr. Moore's opinion that Plaintiff could not complete a normal workday or workweek without interruption from psychologically based symptoms or stay on pace without unreasonable breaks. The vocational expert testified that adding these marked limitations to the RFC would be disabling. (Tr. 58.) Therefore, remand is necessary for the ALJ to either incorporate these parts of Dr. Moore's opinion into the RFC or explain why they should not be included. *See Thorpe v. Berryhill*, No. 3:18-05083-CV-RK, 2019 WL 5423026, at *2 (W.D. Mo. Oct. 23, 2019) (error not harmless).

The ALJ also did not adequately explain why she discounted the moderate limitations in Dr. Moore's opinion (the fourth bullet point above). The RFC on its face seems to account for some of these limitations, such as the ability to interact with the general public and coworkers, and possibly other abilities given the express limit to routine, unskilled work. *See, e.g.*, *Thompson v. Berryhill*, No. 4:17-00689-CV-RK, 2018 WL 4205036, at *3 (W.D. Mo. Sept. 4, 2018) (a routine-task limitation "was sufficient to account for [the] [p]laintiff's moderate restriction in concentration, persistence, or pace"). However, the ALJ did not address several of the limitations referenced by Dr. Moore, such as the ability to receive criticism. *See Richardson v. Colvin*, No. 5:16-06148-CV-RK, 2017 WL 6420283, at *2 (W.D. Mo. Dec. 18, 2017) (RFC limit to occasional interaction with supervisors insufficient to account for limits on handling criticism). If the ALJ believes the moderate limitations in Dr. Moore's opinion should be discounted, on remand, she should explain which ones and why. *See McCadney v. Astrue*, 519 F.3d 764, 767 (8th Cir. 2008) (remanding because it was unclear whether the ALJ meant to discount parts of the treating physician's opinion, and if so, why).

The Court also agrees with Plaintiff that the reasons the ALJ gave for discounting Dr. Moore's opinion were insufficient. An ALJ must "give good reasons" to discount a treating physician's opinion. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012). Here, the ALJ gave no weight to Dr. Moore's opinion that Plaintiff would miss approximately four days of work per month and that he would be off task at least 25% of the time. The ALJ discounted this opinion for the following reasons: "It is inconsistent with the evidence. In fact, treatment records consistently note the claimant's attention is intact." (Tr. 16 (citing Dr. Moore's treatment notes, Tr. 339-54, 383-90).) The Court cannot discern from this explanation why the Dr. Moore's opinion should be discounted. Specifically, it is unclear to the Court why Plaintiff's ability to consistently pay attention at doctor visits shows that he would miss fewer than four days of work per month and

4

that he would be able to stay on task more than 75% of a 40-hour workweek. Furthermore, after reviewing the treatment notes cited by the ALJ, it is not apparent to the Court why the ALJ believed Dr. Moore's opinion is inconsistent with the evidence as a whole. The treatment records show various abnormalities and no obvious reason to believe Dr. Moore's opinion is inconsistent with his own treatment notes. (*E.g.*, Tr. 339 ("[m]ood all over the place"); Tr. 340 (describing hallucinations Plaintiff reported to Dr. Moore).) On remand, if Dr. Moore's opinion is to be discounted as inconsistent with the medical evidence, the ALJ should explain which parts of the record are inconsistent and why.

## II. Subjective Complaints

When evaluating a plaintiff's subjective complaints, an ALJ "must give full consideration to all of the evidence presented relating to subjective complaints . . . [including]: (1) the claimant's daily activities; (2) the duration, frequency and intensity of pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); *see also* SSR 16-3p, 2016 WL 1020935 (March 16, 2016). "The ALJ is not required to discuss methodically each *Polaski* consideration, so long as he acknowledges and examines those considerations before discounting the [plaintiff's] subjective complaints." *McDade v. Astrue*, 720 F.3d 994, 998 (8th Cir. 2013) (cleaned up). The ALJ may discredit subjective complaints if they are "inconsistent with the evidence on the record as a whole" but must "make an express credibility determination detailing his reasons for discrediting the testimony." *Delrosa v. Sullivan*, 922 F.2d 480, 485 (8th Cir. 1991). The Court "will not substitute its opinion for the ALJ's, who is in the better position to gauge credibility and resolve conflicts in the evidence." *Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007).

Here, the ALJ stated that she considered all of Plaintiff's symptoms and the extent they could reasonably be accepted as consistent with the record. (Tr. 14-17.) The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the record. (*Id.*) Specifically, the ALJ found inconsistencies between Plaintiff's complaints and his daily activities, as well as treatment notes showing he had adequate attention, concentration, and memory; improvements with medication in his anxiety and panic attacks; lapses in progress because of failure to take medication; and conservative treatment for his tremors. (*Id.* at 15.) The ALJ also questioned Plaintiff's credibility because he reported

5

that he had done no additional work but admitted elsewhere in the record that he had done additional odd jobs. (*Id.*)

Although the ALJ is in a better position to weigh these varying considerations in assessing Plaintiff's subjective complaints, it seems the ALJ overlooked some relevant parts of the record. For example, the ALJ found that "there is no support to the claimant's allegation that his tremors have become worse." (Tr. 15.) However, a report from Susan M. Sifers, M.D. states as follows: "he has had a tremor all his life. . . . He says that his writing is horrible. It has always been affected but *particularly poor in the last 1.5 years*." (Tr. 373 (emphasis added).) The ALJ also found that "[t]here has been no objective findings [sic] for hallucinations." (Tr. 15.) Although the treatment notes do consistently show that Plaintiff did not hallucinate during treatment visits, he did self-report hallucinations to Dr. Moore. (*See* Tr. 340 (Dr. Moore noted as follows about Plaintiff's description of hallucinations: "Has seen figures in room [sic] a few times. Gone when turns on light."); *see also* Tr. 51 (Plaintiff describing previous hallucinations). The ALJ's characterization of the record—that there are no objective findings for hallucinations—appears to be accurate. However, the ALJ did not adequately explain the impact of this lack of objective findings on Plaintiff's subjective complaints. Specifically, it is unclear to the Court what type of testing or objective findings the ALJ would expect to see to substantiate Plaintiff's allegations that he has debilitating hallucinations. *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004); *Willcockson v. Astrue*, 540 F.3d 878, 879-80 (8th Cir. 2008) ("Though we think that the question is close, we conclude that we must remand because we cannot determine from the written decision whether the ALJ properly reviewed the evidence. Several errors and uncertainties in the opinion, that individually might not warrant remand, in combination create sufficient doubt about the ALJ's rationale for denying [the] claims to require further proceedings below.").

## Conclusion

Having carefully reviewed the record before the Court and the parties' submissions on appeal, the Court **REVERSES** the decision of the ALJ under sentence four of 42 U.S.C. § 405(g). This case is **REMANDED** to the ALJ for reassessment of Dr. Moore's opinion, Plaintiff's subjective complaints, and the RFC.

**IT IS SO ORDERED.**

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
DATED: January 2, 2020   UNITED STATES DISTRICT COURT